## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CAPTAIN NANCY S. DIETZ,      :
      :
      Plaintiff,      :
      :
   v.      :
      :
JAMES M. BAKER,      :      C.A. No.
individually and in his official :
capacity as the Mayor of the     :
City of Wilmington; and MAYOR    :
AND COUNCIL OF WILMINGTON, a    :
municipal corporation,     :      JURY TRIAL
      :      DEMANDED
      Defendants.      :

## COMPLAINT

1.  This is a civil action to remedy intentional racial discrimination and an explicit racial quota system used by the current Mayor of the City of Wilmington, Delaware which proximately lead to the failure to promote plaintiff to the position of Uniformed Operations Inspector in October of 2005. Plaintiff seeks detailed judicial inquiry under strict scrutiny  analysis to insure that her personal right to equal protection of the laws is upheld, that racial discrimination odious to our nation's principles of equality is halted and an award of compensatory and punitive damages and injunctive relief. Defendant Baker passed Plaintiff over for promotion because she is a white woman and that promotion was given

instead to a less qualified African-American male.

## I.  <u>JURISDICTION</u>

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202, and the Fourteenth Amendment to the U.S. Constitution.  The cause of action arises under 42 U.S.C. §§ 1981 and 1983.  The claim arose in this judicial district.

## II.  <u>THE PARTIES</u>

3.  Plaintiff is a citizen of the United States.

4.  Defendant James M. Baker is currently the Mayor of the City of Wilmington, Delaware.  He is sued individually and in his official capacity.

5.  Defendant Mayor and Council of Wilmington (the "City of Wilmington") is a municipal corporation organized under the laws of the State of Delaware which operates the City of Wilmington Police Department(the "Police Department")as one of its municipal departments.

## III.  <u>FACTS GIVING RISE TO THE ACTION</u>

### A.  PLAINTIFF'S QUALIFICATIONS

6.  Plaintiff is a 26 year veteran of the Police Department.  She currently holds the rank of Captain and is the Commanding Officer of the Human Resources Division.

7.  Plaintiff was only the second female officer in the

Police Department ever to be promoted to the rank of Captain. Currently, she is the only female holding the rank of Captain.

8.  She is a 1975 graduate of State College High School in State College, Pennsylvania.

9.  Plaintiff is a 1979 graduate of Pennsylvania State University in State College, Pennsylvania where she attained her Bachelor of Science Degree, Administration of Justice, and was on the Dean's List.

10.  She also is a 1987 graduate of the FBI National Academy at the University of Virginia in Quantico, Virginia where she had a GPA of 3.93.  The Chief of Police personally selects those officers to attend the FBI National Academy who he believes are future leaders in the  Police Department.

11.  Currently, plaintiff is enrolled in Wilmington College's Graduate Degree Program for Leadership in Administration of Justice where she has a 4.0 GPA.

12.  Plaintiff has held the following positions with the Police Department:

- Captain, Commanding Officer, Human Resources Division, 2005 to present, where she is responsible for all departmental personnel activities and supervises the Planning, Research and Budgeting Unit, Accreditation, the Training and Academy Unit.

- Captain, Commanding Officer, Office of Professional Standards, 2001 to 2005, where she was responsible for reviewing all Disciplinary matters, internal investigations and departmental shootings, administering the Substance Abuse testing and conducting ethics and discipline training.

- Captain, Commanding Officer, Criminal Investigations Division, 1997 to 2001, where she commanded two Detective platoons, the Drug, Organized Crime and Vice Unit, the Evidence Detection Unit, the Victim Services Unit, the Safe Streets Unit and served as the Department's Liaison Officer to the local and federal agencies.

- Lieutenant, Commander of Criminal Investigations Platoon, 1995 to 1997, which included supervision of a detective platoon, truancy/school investigations, and the auto theft and financial crimes unit.

- Lieutenant, Deputy Commander of Human Resources Division, 1993 to 1995, which included responsibilities for recruitment, selection and training of the police academy officers and the Accreditation and Research Unit.

- Lieutenant, Commander of Patrol Platoon in Uniformed

Services, 1991 to 1993, which included responsibilities for about 25 uniformed patrol officers.

- Sergeant, Investigator for the Office of Professional Standards, 1990 to 1991.

- Sergeant, Supervisor of Patrol Platoon Squad in Uniformed Services, 1989 to 1990.

- Patrol Officer/Detective, Investigator in the Criminal Investigations Division, 1984 to 1989.

- Patrol Officer/Detective, Investigator in the Drug, Organized Crime and Vice Division, 1981 to 1984.

- Patrol Officer, Patrol Division, 1980 to 1981.

13. Her achievements are many.

14. She is the recipient of nine Department Medals, 27 Police, Citizen and Organization Commendations and three Resolutions from the Wilmington City Council.

15. Plaintiff served as the elected past-President, Secretary and Treasurer for the F.B.I. National Academy Associates, Maryland/Delaware Chapter.

16. She was sponsored by former Chief Boykin to become a member of the International Association of Police Chiefs where she has been a member for approximately ten years.

17. Plaintiff served as Deputy Commander of the 83rd Wilmington Police Academy and in the summer of 2006 will be the

Commanding Officer of the 91st Wilmington Police Academy.

18.    She was selected by U.S. Senator Joseph Biden to serve on the Military Service Academy Selection Committee which is responsible for the selection of recruits to attend the various military academies.

19.    In 1982, plaintiff received the Kiwanis Outstanding Service Award for her undercover drug work.

### B.    THE QUOTA SYSTEM

20.    Historically, since at least 1980,the City of Wilmington has used a racial quota system in selecting qualified persons for promotion to the rank of Inspector.  This quota system has been approved by the Administrative Board of the City of Wilmington as set forth in § 4-200 of the Wilmington City Charter.

21.    Inspector is the second highest rank in the Police Department and reports directly to the Chief.  There are two such Inspectors: Investigations Operations and Uniformed Operations.

22.    The Mayor of the City of Wilmington promotes the Inspector upon the recommendation of the Chief of Police.

23.    In making these promotions the City of Wilmington has always explicitly required that one current Inspector be white and that the other be African-American.

24.    To this end the City has always followed a program in

-6-

which a certain fixed number, proportion or percentage of opportunities are reserved exclusively for certain minority groups, that is, 50% for whites and 50% for blacks.

25. The City has imposed a fixed number, proportion or percentage which always must be attained.

26. Defendant Baker has fully complied with this historic quota system.

27. He has only promoted City Police Inspectors on account of race in accord with these illegal racial quotas.

28. Martin Donahue, a white male, served as the Investigation Operations Inspector prior to defendant Baker taking office and he continues to hold this position.

29. At the time defendant Baker was elected, James Stallings, an African-American male, served as the Uniformed Operations Inspector.

30. In February of 2001, after James Stallings retired as Uniformed Operations Inspector, defendant Baker filled the vacancy by promoting James Wright, an African-American male.

31. Then in October of 2005, after James Wright retired as Uniformed Operations Inspector, defendant Baker filled the vacancy by promoting Gilbert Howell, an African-American male.

32. The Chief of the Police Department is Michael J. Szczerba who has served for over five years.

33. Previously in 2001, after African-American James Stallings retired as Uniformed Operations Inspector, because of the operation of the quota system Chief Szczerba was forced to consider only African-Americans for promotion to this position, to the detriment of plaintiff.

34. Acting pursuant to the illegal racial quota system, defendant Baker promoted James Wright, an African American to Uniformed Operations Inspector.  He refused to consider plaintiff.

35. Otherwise there would have been two white Inspectors in the Police Department since Martin Donahue already was white.

36. This would have violated the 50% white, 50% African American racial quota requirement.

37. Subsequently, in October of 2005, after James Wright retired, another vacancy for Uniformed Operations Inspector arose.  Chief Szczerba met with Baker and recommended plaintiff for this promotion.

38. But defendant Baker instead promoted an African-American male, Gilbert Howell.

39. Otherwise there would have been two white Inspectors in the Police Department since Martin Donahue already was white.

40. This would have violated the 50% white, 50% African American racial quota requirement.

-8-

41.   Shortly after plaintiff learned that she was denied this promotion, she arranged a meeting with Public Safety Director James Mosley, an African-American.  Mosley indicated to her that the Uniformed Operations Inspector has always been an African-American, while the Investigation Operations Inspector has always been white.  Consequently, the operation of the racial quota system prevented plaintiff's promotion.

42.   At this time, plaintiff first discovered that she had been the victim of racial discrimination in the 2001 promotion. Prior to this date this fact was inherently unknowable.

### E. DAMAGES

43.   As a direct and proximate result of the actions of the defendants as detailed herein, plaintiff has and will suffer lost wages, earnings and benefits, diminished earning capacity and she will receive less pension and other benefits upon her retirement, decreased employment and earnings opportunities, and other pecuniary losses, emotional pain, suffering, disappointment, anger, inconvenience, mental anguish, loss of enjoyment of life, mental and physical pain, anguish, humiliation, embarrassment, injury to reputation, and other non-pecuniary losses and injury.

### IV.   ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

44.   All the actions of the defendants described in the various Counts set out below were taken pursuant to policies,

practices and/or customs of the City of Wilmington and were authorized, sanctioned, implemented, permitted and ratified by officials functioning at a policymaking level.

45. By the policy, practice and/or custom of officials functioning at a policymaking level, the City of Wilmington has denied Plaintiff's constitutional rights under the Fourteenth Amendment to the United States Constitution.

46. The City of Wilmington also has a policy, practice and/or custom of delegating unfettered standardless discretion to the Mayor to appoint Inspectors. This policy has been deliberately crafted by the City of Wilmington in an unlawful attempt to shield itself from municipal liability for its unconstitutional and wrongful acts relating to employee promotions. Specifically, the policy intentionally removes municipal policy makers other than the Mayor from participation and decision-making in such personnel matters and purportedly grants exclusive authority over such decisions to the Mayor, all in a deliberate, but wholly formal and constitutionally inefficacious, attempt to insulate the municipality from responsibility for unconstitutional employee promotions. The City's formal segregation of policymaking officials on the Administrative Board from the process results by practice or custom in a <u>de facto</u> delegation of policymaking authority to

decisionmaking officials in this subject area.  Piercing the veil
of this formal construct, the Mayor is the ultimate policymaker
by policy, practice and/or custom on matters affecting promotion
to the rank of Inspector.

47.  All personnel decisions made by Mayor regarding
promotion to Inspector are authorized, permitted, implemented,
sanctioned, ratified and approved under the above referenced
policy, practice and/or custom.

48.  The individual defendant's actions violated clearly
established federal constitutional rights of which any official
would have known, including decades of Third Circuit case law
prohibiting racial and/or gender discrimination against public
employees.

49.  At all times material hereto the individual defendant
participated in, authorized, and sanctioned the federal
constitutional deprivations described above.

50.  At all times material hereto the individual defendant
and his agents were acting under color of law.  The federal
constitutional deprivations described herein are fairly
attributable to the City of Wilmington.

51.  The defendants either knew or showed a negligent or
reckless disregard for the matter of whether their conduct
violated federal constitutional rights.

-11-

52.   The actions of the defendants and their agents or employees were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federal constitutional rights and because of the exercise of those rights.

53.   Their actions were malicious, outrageous, wanton, and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.

54.   The exercise of rights under the U.S. Constitution made a difference in all actions adverse to plaintiff.

55.   The exercise of these rights was a motivating, substantial or determinative factor in all actions adverse to plaintiff.

56.   The defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

57.   The defendants' actions were motivated by bias, bad faith, and improper motive.

58.   The defendants' actions constitute an abuse of governmental power.

59.   The defendants' actions do not further any narrowly drawn important, substantial or compelling governmental interest.

60.   The defendants' actions are not so reasonable as to

further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

### COUNT I (Illegal Quota System)

61.  Plaintiff repeats and realleges paragraphs 1 - 60 set out above.

62.  The defendants maintain an illegal racial quota system.

63.  Plaintiff was denied promotion to the rank of Inspector in October 2005 and in 2001 because of that illegal quota system.

64.  Plaintiff's right to be free of racial discrimination under the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983 has been denied.

### Count II (Promotion, Race Discrimination)

#### A.  PRETEXT ANALYSIS

65.  Plaintiff repeats and realleges paragraphs 1-64 set out above.

66.  Plaintiff was qualified for promotion to Uniformed Operations Inspector in October 2005 and also in 2001.

67.  At all times material hereto she was a diligent, honest, and loyal employee who always performed her job in an exemplary manner.

68.  Plaintiff sought promotion and the Chief of Police recommended her for promotion in 2005.

69.  A vacancy twice existed for promotion to Uniformed

Operations Inspector.

70.  Plaintiff is white.

71.  The promotion went to a less qualified African-American on both occasions.  For example, Gilbert Howell suffers from chronic absenteeism.

72.  Any legitimate non-discriminatory reason offered by the defendants for their actions is a pretext for intentional and purposeful discrimination based on race.  Any reason offered by the defendants is unworthy of credence since plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them unworthy of credence and hence infer that the defendants did not act for the asserted non-discriminatory reason.

73.  Alternatively, plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment actions was the race of the plaintiff.

74.  Plaintiff's right to be free of racial discrimination under the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983 has been denied.

## Count III (Promotion, Sex Discrimination)

## A. PRETEXT ANALYSIS

75. Alternatively, plaintiff repeats and realleges paragraphs 1-64 set out above.

76. Plaintiff was qualified for promotion to Uniformed Operations Inspector in October 2005 and in 2001.

77. At all times material hereto she was a diligent, honest, and loyal employee who always performed her job in an exemplary manner.

78. Plaintiff sought promotion and the Chief of Police recommended her for promotion in 2005.

79. A vacancy twice existed for promotion to Uniformed Operations Inspector.

80. Plaintiff is female.

81. The promotion went to a less qualified male on both occasions.  For example, Gilbert Howell suffers from chronic absenteeism.

82. Any legitimate non-discriminatory reason offered by the defendants for their actions is a pretext for intentional and purposeful discrimination based on sex.  Any reason offered by the defendants is unworthy of credence since plaintiff can demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the proffered legitimate reasons that a reasonable fact finder can rationally find them

unworthy of credence and hence infer that the defendants did not act for the asserted non-discriminatory reason.

83.    Alternatively, plaintiff can demonstrate pretext because the natural probative force of all direct and circumstantial evidence establishes that it is more likely than not that a motivating or determinative cause of the adverse employment action was the sex of the plaintiff.

84.    For example, approximately 85% of the City Police are males (265-270 men) and only 15% are females (25-30 women).

85.    No woman has ever held the rank of Inspector in the Police Department.

86.    Plaintiff's right to be free of sex discrimination under the Fourteenth Amendment and 42 U.S.C. § 1983 has been denied.

**WHEREFORE**, plaintiff prays that the Court:

I.    Enter judgment against the defendants.

II.    Enter a declaratory judgment declaring the acts of the defendants to be a violation of plaintiff's constitutional rights.

III.    Enter a judgment against the defendants for compensatory damages, including lost wages, back pay, pension and other benefits, for

-16-

future or front pay, loss of earning capacity,

emotional distress, humiliation,

embarrassment, and injury to reputation.

IV. Enter a judgment against the individual defendant for punitive damages.

V. Issue a mandatory injunction directing defendant Baker to promote plaintiff immediately to the rank of Uniformed Operations Inspector in the City of Wilmington Police Department.

VI. Award front pay until plaintiff can be promoted.

VII. Issue a reparative injunction directing that upon retirement plaintiff's pension and other benefits be calculated as if she had been promoted to Uniformed Operations Inspector as of either 2001 or 2005.

VIII. Issue a reparative injunction directing that the individual defendant place a signed document in plaintiff's personnel file indicating that she was qualified to be promoted to Uniformed Operations Inspector and that but for illegal conduct by the defendants she would have been promoted to that rank, and apologizing to plaintiff for violating her constitutional rights.

-17-

IX.   Enjoin the defendants from retaliating against plaintiff.

X.    Award plaintiff attorney's fees, costs and pre and post judgment interest for this action.

XI.   Require such other and further relief as the Court deems just and proper under the circumstances.


**THE NEUBERGER FIRM, P.A.**


/s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQUIRE** (#243)
**STEPHEN J. NEUBERGER, ESQUIRE** (#4440)
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
tsn@neubergerlaw.com
sjn@neubergerlaw.com

Attorneys for Plaintiff


Dated: April 20, 2006

DIETZ/PLEADINGS/COMPLAINT.FINAL

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

CAPTAIN NANCY S. DIETZ

## DEFENDANTS

JAMES M. BAKER, individually and in his Official capacity as Mayor of Wilmington, and MAYOR AND COUNCIL OF WILMINGTON

(b) County of Residence    New Castle
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
THE NEUBERGER FIRM, P.A.
Two East Seventh Street, Suite 302
Wilmington, DE 19801    (302) 655-0582

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

X 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | Injury | | Relations | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | X 442 Employment | Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee Determination Under |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | or Defendant) | Equal Access to Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | Security Act | 26 USC 7609 | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

X 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This is a civil action under 42 U.S.C. Sec. 1983 for compensatory and punitive damages and for injunctive relief for gender discrimination in promotions.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE 4/20/06

SIGNATURE OF ATTORNEY OF RECORD
Thomas S. Neuberger

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

JS 44 Reverse (Rev. 3/99)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

## Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.    (a) Plaintiffs-Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.    Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.    Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.    Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.    Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.    Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.    Related Cases. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.