# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**CAPTAIN NANCY S. DIETZ,**                    :
                                              :
    **Plaintiff,**                          :
                                              :
**v.**                                         :
                                              :    **C.A.No.06-256-SLR**
**MAYOR JAMES M. BAKER,**                      :
**individually and in his official capacity**  :
**as the Mayor of the City of Wilmington,**    :
**and the CITY OF WILMINGTON, a**              :
**municipal corporation,**                     :
                                              :
    **Defendants.**                         :


## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
## HER MOTION FOR FULL AND/OR PARTIAL SUMMARY JUDGMENT


        **THE NEUBERGER FIRM, P.A.**
        **THOMAS S. NEUBERGER, ESQ. (#243)**
        **STEPHEN J. NEUBERGER, ESQ. (#4440)**
        Two East Seventh Street, Suite 302
        Wilmington, DE 19801
        (302) 655-0582
        TSN@NeubergerLaw.com
        SJN@NeubergerLaw.com

Dated: August 17, 2007        Attorneys for Plaintiff

## TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    DEFENDANTS' RACIAL QUOTA SYSTEM FOR THE RANK OF
INSPECTOR VIOLATES BOTH THE FOURTEENTH AMENDMENT
EQUAL PROTECTION CLAUSE AND 42 U.S.C. §1981 . . . . . . . . . . . . . . . . 1

    A.    Defendants Ignore Their Own Internal WPD Documents Which
Prove the Quota System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    What The Undisputed Factual Record Actually Reveals . . . . . . . . . . . . . 1

        1.    Each Time A Black Inspector Retired, A Black Then Was
Promoted to Inspector . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        2.    Each Time A White Inspector Retired, A White Then Was
Promoted to Inspector . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            Chart - "The Progression of the Quota System" . . . . . . . . . . . . . 4

        3.    It is the Race of the Officer Promoted to Inspector When
Another Inspector Retires, Not the Title of the Various Inspector
Positions That Governs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        4.    The Short Periods of Time Between A Retirement and a
Promotion Are Irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.    THERE IS NO EVIDENCE OF A COMPELLING STATE INTEREST
WHICH WOULD JUSTIFY A QUOTA OR THE USE OF RACE OR SEX
TO DENY PLAINTIFF A PROMOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    Defendants Have Conceded the Lack of Any Exceedingly Persuasive
Justification to Justify the Use of Gender . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    There is No Past or Present Discrimination to Justify the Use of Race
As a Factor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    Defendants Have Failed to Create a Proper Record on This Issue . . . . . . 7

        1.    There Is No Record to Support An "Operational Need" to Use
Race . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2.      A Study of Police Brutality In New York City Is Irrelevant to
        Race Relations in Wilmington . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

D.      The Defense Approach is Not Narrowly Tailored . . . . . . . . . . . . . . . . . 10

        1.      A Racial Quota System is Never Narrowly Tailored . . . . . . . . . 10

        2.      Other Factors Prove Defendants' Policy is Not Narrowly
                Tailored . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.    UNDER THE DIRECT EVIDENCE PARADIGM OF PRICE
        WATERHOUSE v. HOPKINS, RACE PLAYED A MOTIVATING ROLE
        IN THE DENIAL OF THESE PROMOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . 12

A.      Defendants Admit to Using Race as a Factor . . . . . . . . . . . . . . . . . 13

B.      Baker's Admission that Race was the Reason Plaintiff was Not
        Promoted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.      The Quota System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

D.      High Ranking Defense Officials Admit that "Diversity" is Taken into
        Consideration for all Promotions and Transfers . . . . . . . . . . . . . . . . . 14

IV.     PLAINTIFF HAS PROVEN A PRIMA FACIE CASE OF RACE AND
        GENDER DISCRIMINATION AND ALSO HAS SUFFICIENT EVIDENCE
        UNDER BOTH PRONGS OF FUENTES TO GO TO THE JURY . . . . . . . . . . 15

A.      Prima Facie Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B.      Defendants' Legitimate Non-Discriminatory Reason . . . . . . . . . . . . . . 16

C.      Plaintiff Also Has Satisfied Her Fuentes Burden to Show Pretext . . . . . 16

        1. Prong One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        2. Prong Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**TABLE OF AUTHORITIES**

**Cases**                                                                                                        **Page**

Capital Funding v. Chase Manhattan Bank USA, 191 Fed.Appx. 92 (3d Cir. 2006) . . . . . . . . . 10

City of Richmond v. J.A. Croson Co., 488 U.S. 469 (1989) (plurality decision) . . . . . . . . 7,9-10

Darchia v. Ashcroft, 101 Fed.Appx. 373 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Detroit Police Officer's Association v. Young, 608 F.2d 671 (6th Cir. 1979) . . . . . . . . . . . . . . . 8

Fakete v. Aetna, Inc., 308 F.3d 335 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,15

Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-20

Gratz v. Bollinger, 539 U.S. 244 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Grutter v. Bollinger, 539 U.S. 306 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,5,10-12

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Messer v. Meno, 130 F.3d 130 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1,
     – U.S. –, 2007 WL 1836531, *18 (June 28, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Patrolmen's Benevolent Association of the City of New York v. The City of New York,
     310 F.3d 43 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8,12

Petit v. City of Chicago, 352 F.3d 1111 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13,15,20

Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061 (ed Cir. 1996) (en banc) . . . . 16,19

Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . 15

Steward v. Sears Roebuck & Company, 2007 WL 2310028 (3d Cir. Aug. 14, 2007) . . . . . . . . 17

Taxman v. Board of Educ. Of Tp. of Piscataway, 91 F.3d 1547 (3d Cir. 1996) (en banc) . . . . . 11

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S. v. Virginia, 518 U.S. 515 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*iii*

United States v. Paradise, 480 U.S. 149 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Walden v. Georgia-Pacific Corp., 126 F.3d 506 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Constitutions, Statutes, and Rules**

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R.Evid. 201(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed.R.Evid. 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed.R.Evid. 901(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>ARGUMENT</u>

I.    **DEFENDANTS' RACIAL QUOTA SYSTEM FOR THE RANK OF INSPECTOR VIOLATES BOTH THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE AND 42 U.S.C. §1981.**

   **A. Defendants Ignore Their Own Internal WPD Documents Which Prove the Quota System.** The most obvious omission from Defendants' Answering Brief is their failure to address or make any mention of the very document and chart they produced in discovery that very plainly explains and proves that whenever a black Inspector retires, another black officer is promoted to replace him. (D03391; A1257). This chart proves the operation of a racial quota system dating back to black Inspector Kenneth Miles in 1978, through the most current black Inspector, Gilbert Howell in 2005. (<u>Id</u>.). The WPD's reservation of a "fixed number or proportion of opportunities" for promotion to Inspector is blatantly unconstitutional under <u>Grutter v. Bollinger</u>, 539 U.S. 306 (2003). As plaintiff stated in her Opening Brief ("OB"), the dates corresponding to when one black Inspector retired and when another was promoted are astounding. (OB at 10).

   **B. What The Undisputed Factual Record Actually Reveals.**

       **1. Each Time A Black Inspector Retired, A Black Then Was Promoted to Inspector.** Yet even in the face of D03391, defendants continue to somehow claim that a black did not always replace a black. (Answering Brief ("AB") at 17). Defendants even falsely claim that once a white replaced a black and a black replaced a white. (AB at 9). For example, defendants falsely assert that Miles was succeeded by Eugene Maloney, a white. (AB at 9). Yet a simple review of D03391, WPD's very own internal record, shows that Miles was instead replaced by John Johnson, a black. (A1257).

   First, Maloney simply did not replace Miles at the rank of Inspector. Instead, the record

1

reveals that Maloney was promoted to Inspector three to five years[1] **before** Miles. (D03391;
Defendants' Supp. Inter. Resp. #1 p.4; A1257,0377).  In other words, Maloney was an Inspector
long before Miles.

This defense error arises from the fact that they are focusing on the various titles given to
the Inspector positions over the years, rather than the race of the officer who was actually
promoted to replace a retiring Inspector.  Plaintiff suggests that defendants review their own
internal WPD chart and document - D03391 - which plainly reveals that each time a black
Inspector retired, a black officer was promoted to Inspector, and that each time a white Inspector
retired, a white officer was promoted to Inspector. (D03391; A1257).  Once that defense
document is reviewed, it is made clear that each time a black retires, a black is promoted and that
each time a white retires, a white is promoted.

Defendants erroneously focus on the fact that when Miles retired in October of 1981,
Maloney assumed his <u>title</u> of Inspector of Services. (AB at 9; Defendants' Supp. Inter. Resp. #1
p.7; A0380).  Unfortunately for defendants, plaintiff's case is not based on the Inspector's title,
but rather their actual position as an Inspector, regardless of the title. (OB at 9-10).  Whenever a
black Inspector retired, a black was then promoted to the rank of Inspector.  As the defense
documents reveal, when Miles retired, John Johnson, another black officer, was promoted to
Inspector. (D03391; A1257).

## 2.  Each Time A White Inspector Retired, A White Then Was Promoted to

**Inspector.**  Similarly, defendants also erroneously claim that John Vignola, a white, was replaced
by Keith Ash, a black. (AB at 9).  Yet defendants' own documents once again reveal that upon

---

[1] There is some discrepancy as to Eugene Maloney's initial promotion date.  It is listed as
both 10/16/1973 (D03391; A1257) and 10/26/75 (Defendants' Supp. Inter. Resp. #1 p.4; A0377).

Vignola's retirement, John Murray, a white, was promoted to Inspector.  (D03391; A1257).

Again, defendants confusingly focus on the fact that in 1997, Ash took over for Vignola as

Inspector of Operations/Uniformed Operations. (AB at 9; Defendants' Supp. Inter. Resp. #1 p.6;

A0379).  The titles are irrelevant.  Based on defendants' own document, a white <u>always</u> replaced

a white and a black always replaced a black. (D03391; A1257).  The following chart, which is

based entirely on defendants' document - D03391 - clearly illustrates this progression.

**The Progression of the Quota System**



| | | | |
|---|---|---|---|
| 1979 | 1979 | 1979 | 1979 |
| Maloney (w) | Bryan (w) | Friedman (w) | Miles (b) |
| | 1981 | | 1981 |
| | Curtis (w) | | Johnson (b) |
| 1983 | 1983 | 1983 | |
| Dougherty (w) | Payne (w) | Doherty (w) | |
| | retired 1987 | | 1987 |
| | (position | | Hickman (b) |
| | eliminated) | Feb. 1989 | 1989 |
| | | LaFashia (w) | Pratcher (b) |
| retired 1989 | | May. 1989 | |
| (position | | Draper (w) | |
| eliminated) | | | 1993 |
| | | 1994 | Dixon (b) |
| | | Vignola (w) | 1995 |
| | | | Boykin (b) |
| | | 1997 | 1997 |
| | | Murray (w) | Ash (b) |
| | | | 1998 |
| | | | Stallings (b) |
| | | May 1999 | |
| | | Huston (w) | |
| | | July 1999 | 2001 |
| | | Donohue (w) | Wright (b) |
| | | | 2005 |
| | | | Howell (b) |
| | | | retired 7/31/2007 |
| | | present | (position vacant) |

(D03391; A1257)

**3.  It is the Race of the Officer Promoted to Inspector When Another Inspector Retires, Not the Title of the Various Inspector Positions That Governs.**  Contrary to the  defense assertion that "[n]either inspector position has been 'exclusively white' or 'exclusively African-American," (AB at 10), plaintiff's argument is based on the Inspectors in existence at any given time, not their titles. (OB at 7-13).  Plaintiff has never sought to prove her case based on titles alone.  Such a simplistic approach would elevate form over substance and violate the Supreme Court's express admonition to "'smoke out' illegitimate uses of race" by the government.  Grutter, 539 U.S. at 326.[2]

**4.  The Short Periods of Time Between A Retirement and a Promotion Are Irrelevant.**  Lastly, defendants attempt to disprove the quota system by arguing there were three short month long periods of time when no black Inspector existed. (AB at 10).  But these short periods of time are irrelevant to the question of whether whenever a black Inspector retired, another black then was promoted to Inspector, and to whether whenever a white Inspector retired, another white then was promoted to Inspector.  Once a replacement was promoted, he always was of the same race as the officer retiring.

The periods of time at issue are as follows.  First, there was no black Inspector from July 31, 1987 to September 30, 1987, a period of only two months.  (Id.).  Second, there was no black Inspector from January 7, 1993 to February 5, 1993, a period of only one month.  (Id.).  Third, there was no black Inspector from September 22, 1995 to November 4, 1995, a period of only one and a half months.  (Id.).  That defendants have hung their quota defense on this assertion

---

[2]  Even when focusing solely on titles as defendants wish to do, the record reveals that, since 1997, the Uniformed Operations Inspector position has only been filled by a black male, while the Investigative Operations Inspector has only been filled by a white male - a point defendants failed to address. (OB at 12).

reveals the weakness of their position. It should come as no surprise that it may take the WPD a little bit of time to promote a replacement Inspector when one suddenly announces his retirement. Sometimes it takes time to get the appropriate paperwork completed or to do the sham consultations with the relevant politicians. Thus, this one to two month span is inconsequential and irrelevant.

 **C. Conclusion.** Defendants have failed to address the actual factual record, including their own internal WPD documents which themselves independently reveal the existence of the racial quota system. Thus, they have not created a genuine issue of material disputed fact. By refusing to address their own chart demonstrating and proving the quota system, defendants have conceded that the chart is accurate. (D03391; A1257). Therefore, no dispute of <u>material</u> fact exists with regard to the quota system. For the reasons stated above, as well as in plaintiff's Opening Brief (OB at 7-13,29-30), summary judgment should be entered for plaintiff on liability under the quota theory.

**II. THERE IS NO EVIDENCE OF A COMPELLING STATE INTEREST WHICH WOULD JUSTIFY A QUOTA OR THE USE OF RACE OR SEX TO DENY PLAINTIFF A PROMOTION**.

 **A. Defendants Have Conceded the Lack of Any Exceedingly Persuasive Justification to Justify the Use of Gender.** Nowhere in defendants' answering brief do they contest or anyway argue against plaintiff's assertion that they have failed to meet their burden of proving an exceedingly persuasive justification to use gender as a factor in promotions. See <u>U.S. v. Virginia</u>, 518 U.S. 515, 531-33 (1996). Accordingly, judgment should be entered for plaintiff on this issue.

 **B. There is No Past or Present Discrimination to Justify the Use of Race As a Factor.** As plaintiff stated in her opening brief, the Supreme Court has only found a compelling

state interest strong enough to justify the intentional use of race by the government in three instances. (OB at 38). Since this case does not address national security concerns and is not within the specialized realm of education, defendants can only pin their hopes to remedying identified past or present discrimination. Yet, as the Supreme Court has held, this would have required "judicial, legislative, or administrative findings of constitutional or statutory violations." City of Richmond v. J.A. Croson Co., 488 U.S. 469, 497 (1989) (plurality decision).

It is undisputed that no such judicial, legislative or administrative findings of constitutional or statutory violations have been made regarding the WPD. Indeed, defendants declined to even make mention of this argument in their answering brief. Thus, they concede they have no compelling state interest to remedy past or present discrimination which would justify the use of race in the promotions to Inspector. As a matter of law, defendants have then failed to meet their required burden.

**C. Defendants Have Failed to Create a Proper Record on This Issue.**

**1. There Is No Record to Support An "Operational Need" to Use Race.**

Defendants blatantly admit to using race in making promotion decisions in the WPD. (AB 18-20). They claim that the WPD had a compelling state interest, not found in one of the three instances addressed by the Supreme Court, but by virtue of using race as a "plus" factor due to the "operational needs" of the department. (AB at 18-19).

In support of this claim, defendants cite to four decisions from foreign circuit courts. (AB at 18). Yet even in those cases, those courts required that in order to use race as a "plus" factor in an "operational needs" argument, the defendant must be able to "demonstrate that it is motivated by a truly powerful and worthy concern and that the racial measure adopted is a plainly apt response to that concern." Patrolmen's Benevolent Association of the City of New York v.

The City of New York, 310 F.3d 43, 52-53 (2d Cir. 2002) (internal citations omitted).  "The justification must be substantiated by objective evidence - mere speculation or conjecture is insufficient." Id. at 53.  In other words, they must make a strong evidentiary showing.

In our present case, defendants have offered no evidence whatsoever (objective or otherwise) to meet their heavy burden of proving that there is an operational need to use race in promotion decisions.  Instead they were motivated by simple racial politics. (OB at 39-40).  "The mere assertion of an 'operational need' to make race-conscious employment decisions does not, however, give a police department *carte blanche* to dole out work assignments based on race if no such justification is established." Patrolmen's Benevolent Ass'n, 310 F.3d at 52.

Strict scrutiny requires more than a mere assumption that using a race based classification is an appropriate response to the state interest. Id. at 53.  "Argument...must not be allowed to draw on 'common sense,' which might be inflected by stereotypes." Id. (internal citations and punctuation omitted).  The Second Circuit has held and explained that mere reliance on academic literature and case law to support the idea that "increased minority representation on a police force may improve police-community relations" is not enough to prove the use of a race-based process as a constitutionally permissible means of improving law enforcement. Id. at 53-54.

Similarly, the Seventh Circuit also requires that a strong evidentiary showing be made. That Circuit has held that the government can sustain a finding of compelling state interest based on the testimony of experts and high ranking police executives which may try to show that affirmative action is warranted to enhance operational needs. Petit v. City of Chicago, 352 F.3d 1111, 1114 (7th Cir. 2004); see also Detroit Police Officer's Association v. Young, 608 F.2d 671, 695-696 (6th Cir. 1979).  In the case at bar, defendants have failed to create any such record. Accordingly, defendants cannot rely on any expert testimony regarding their use of a race-based

policy and whether it is necessary.  The deadline for experts has come and gone and they have no

such expert.

      **2.  A Study of Police Brutality In New York City Is Irrelevant to Race**

**Relations in Wilmington.**  Thus, defendants rely solely on an inapposite 1996 Amnesty

International Report on Police Brutality in New York City (AB at 19), a report specifically

structured to survey New York City after public uproars concerning an overwhelming amount of

police brutality. (Defendants' Summary Judgment Appendix at B054).

      First, the Court can take judicial notice under Fed.R.Evid. 201(c) or (d) that Wilmington

is not New York City.  Accordingly, this report is irrelevant.  Defendants have offered no such

report or findings for Wilmington.  New York City has over 8 million residents and nearly 38,000

sworn police officers.  Wilmington has decidedly fewer in each category.

      Second, defendants have failed to create any type of record which could even hope to

suggest why the relationship between the police department and the minority community in

Wilmington needs such dramatic improvement as to merit the use of such a highly suspect racial

tool.  "A governmental actor cannot render race a legitimate proxy for a particular condition

merely by declaring that the condition exists." Croson, 488 U.S. at 501.  Yet defendants refuse to

address this evidentiary hurdle.  Bald assertions or purported 'common sense' claims are

insufficient to warrant use of race as a 'plus' factor due to operational needs.  Courts do not

operate this way.  Instead, courts require that legal "determinations must be based on evidence in

the record, rather than speculation or conjecture." Darchia v. Ashcroft, 101 Fed.Appx. 373, 376

(3d Cir. 2004).

      Third, defendants have no expert to interpret such a report as is required.  The deadline

for expert reports expired on March 1, 2007.  Accordingly, without this required expert

testimony, defendants cannot rely on the report to support their claim that an "operational need" exists to use a race-based policy.

Fourth, the report lacks authentication or foundation as required by Fed.R.Evid. 901(a). "Fed.R.Evid. 901(a) requires documents to be authenticated in order for them to be admissible at trial, and only evidence admissible at trial may be considered in ruling on a motion for summary judgement. Capital Funding v. Chase Manhattan Bank USA, 191 Fed.Appx. 92, *4 (3d Cir. 2006). Therefore, since defendants have failed to authenticate this report or lay any foundation for it whatsoever, it is inadmissible evidence which cannot be considered in ruling on summary judgment.

**D. The Defense Approach is Not Narrowly Tailored.** Even assuming defendants were somehow able to meet their heavy burden of proving a compelling state interest based on an operational need, it also is not narrowly tailored and so it fails on this ground as well.

A racial classification is reviewed under strict scrutiny, meaning it is only constitutional if it is narrowly tailored to further compelling governmental interests. Grutter, 539 U.S. at 326. "The purpose of the narrow tailoring requirement is to ensure that 'the means chosen 'fit' th[e] compelling goal so closely that there is little or no possibility that the motive for the classification was illegitimate racial prejudice or stereotype.'" Id. at 333 (quoting Croson, 488 U.S. at 493).

**1. A Racial Quota System is Never Narrowly Tailored.** Defendants' policy of considering the race of all applicants for promotion to the rank of Inspector is the equivalent of a quota system which can never be narrowly tailored. Grutter, 539 U.S. at 334. "Quotas impose a fixed number or percentage which must be attained, or which cannot be exceeded, and insulate the individual from comparison with all other candidates for the available seats." Id. (internal citations omitted). Defendants are not using race as a 'plus' factor such as the law school in

Grutter, but as a determinative factor.  In Taxman v. Board of Educ. of Tp. of Piscataway, 91

F.3d 1547, 1563-65 (3d Cir. 1996) (en banc), the Court held that a state actor violates the civil

rights laws when he applies an affirmative action plan which results in the use of race as the

determinative factor between two equally qualified individuals.  Yet this is exactly what

defendants brazenly claim the right to do (see AB at 20), something which the Third Circuit en

banc has long forbidden.

By reserving one Inspector position for a black, defendants are operating similar to the

Michigan undergraduate school in Gratz v. Bollinger.  539 U.S. 244 (2003).  There, the Court

held that automatically assigning a portion of the points needed to gain admission solely based on

race was not narrowly tailored. Id. at 270.  Race must be used in "a flexible, nonmechanical way."

Petit, 352 F.3d at 1116.  Defendants argue that their policy of considering diversity is flexible.

(AB at 20).  But "[a] race-conscious ... program cannot use a quota system," Petit, 352 F.3d at

1116, as defendants' own internal WPD documents reveal they have done.  In Petit, the Seventh

Circuit found that the Chicago Police Department's practice for promotion to the rank of

Sergeant was narrowly tailored. Id. at 1117-18.  There the Chicago Police Department discovered

that the test for promotion to Sergeant had an adverse impact on minorities since the test was

created from data tending to reflect the views of white officers. Id. at 1117.  The test then was

standardized to remove the adverse impact. Id.  In stark contrast, defendants have no testing

procedure or even an objective process to follow.  The decision of who to promote to Inspector

lies solely with the Mayor who in his last two promotions to Inspector has complied with the

quota system established by the WPD in 1978. (See OB at 8-9,13).

## 2. Other Factors Prove Defendants' Policy is Not Narrowly Tailored.

Assuming arguendo that defendants' policy is not a quota system, the Second Circuit has stated

that in order to determine whether a race-based policy is narrowly tailored, the court should

consider other factors such as the need for the measure, the efficacy of alternative measures, and

the flexibility and duration of the measure. Patrolmen's Benevolent Ass'n, 310 F.3d at 53 (citing

to United States v. Paradise, 480 U.S. 149, 171 (1987)).  First, defendants' need for the use of

race-based consideration, as discussed fully above, is based on nothing but a purported 'common

sense' claim supported by no evidence or expert testimony.  Second, defendants have never tried

any alternative measures.  Since 1978, defendants have operated under the same policy of

considering race in promotions to the rank of Inspector. (D03391; A1257).  Third,

"race-conscious admissions policies must be limited in time." Grutter, 539 U.S. at 342.  "This

requirement reflects that racial classifications, however compelling their goals, are potentially so

dangerous that they may be employed no more broadly than the interest demands." Id.

"Enshrining a permanent justification for racial preferences would offend this fundamental equal

protection principle." Id.  Any governmental entity using a race-based process must have a logical

end point for it. Id.  But defendants have been operating this system without fail for almost thirty

years and have articulated no logical endpoint.  Indeed, based on their unsupported record claim

that Wilmington is a racially divided city, it appears that they boldly claim both the right and

entitlement to continue this system of illicit discrimination in promotion decisions in perpetuity.

But this is not 1968, it is 2007!  Therefore, even under these factors defendants' use of a race-

based policy is not narrowly tailored.

## III.    UNDER THE DIRECT EVIDENCE PARADIGM OF PRICE WATERHOUSE v. HOPKINS, RACE PLAYED A MOTIVATING ROLE IN THE DENIAL OF THESE PROMOTIONS.

Contrary to defense assertions, plaintiff has provided a substantial amount of direct

evidence to warrant shifting the burden of persuasion to defendants under Price Waterhouse v.

Hopkins, 490 U.S. 228 (1989).  Plaintiff relies primarily on the extensive record set forth in her opening brief describing in detail the direct evidence. (OB at 6-13,30-34).

     **A.  Defendants Admit to Using Race as a Factor.**  It is important to note that defendants have openly admitted that they use race in making promotion decisions. (AB at 18-20).  "The City's goal is to fill <u>each</u> open position with an individual who is well qualified for the job and to consider all factors, including the applicants' racial and ethnic background." (AB at 18) (emphasis added).  Defendants further state that race is the determinative factor when there are two equal candidates for a promotion. (AB at 20).  "[I]f two candidates are both qualified for a position, the fact that one is a minority group member may weigh in that person's favor." (Id.).  There can be no more direct evidence than an admission that "*a discriminatory attitude was more likely than not a motivating factor in the employer's decision*."  <u>Walden v. Georgia-Pacific Corp.</u>, 126 F.3d 506, 513 (3d Cir. 1997) (internal punctuation omitted) (emphasis added).

     **B. Baker's Admission that Race was the Reason Plaintiff was Not Promoted.**
Plaintiff produced testimony from Cpl. George Collins who stated that, during a monthly meeting with the Fraternal Order of Police President and Vice-President in 2005, Baker stated the Inspector had to be black. (Collins 9,11; A0221-22).  Baker denies making this statement. (AB at 23).  However, unlike Baker, Collins is a disinterested witness with absolutely no axe to grind and defendants have offered no evidence to the contrary.  Thus, Baker's own words "directly reflect the [ ] unlawful basis for the adverse employment decision" not to promote plaintiff.  <u>Fakete v. Aetna, Inc.</u>, 308 F.3d 335, 339 (3d Cir. 2002).  His words draw a direct correlation to the quota system, as well as defendants admission that they use race in promotion decisions.

     **C. The Quota System.**  As discussed at length above, as well as in her opening brief, plaintiff produced evidence of a quota system excluding whites and females from promotion to

Inspector, which was affirmed by defendants' own internal WPD document. (See Argument I above; OB at 7-13). The racial quota system is not based on purely statistical evidence, but rather documents produced by defendants themselves which admit that when one black Inspector retires, another is then promoted. (D03391; Defendants' Supp. Inter. Resp.#1 p.3-7; ; A1257,376-80). The Court need not draw any inferences about the import of these facts. (See AB at 25). The quota system, as admitted by defendants, serves as direct evidence sufficient to shift the burden of persuasion.

**D.  High Ranking Defense Officials Admit that "Diversity" is Taken into Consideration for all Promotions and Transfers.** In his deposition, Szczerba admitted that every time he meets with Mosley to discuss promotions and transfers, Mosley always inquired into the race of the officer. (Szczerba 209; A1310). As both Szczerba and Montgomery explained, the race of the officer being promoted is always discussed. (Szczerba 207-09; Montgomery 11-14,16-17,24; A1310,267-68,268,270). Defendants now attempt to run from this assertion, by stating for the first time, that Mosley is simply ensuring these "decisions do not appear to be the result of discrimination." (AB at 24). However, Baker admitted that when deciding between two equal candidates, diversity is considered without further qualification. (Baker 33-34; A0234-35). Baker never stated it was an attempt to prevent discrimination, but rather an effort to promote diversification. (Id.). Defendants themselves admit that they use race in the promotion process. (AB at 18-20). But simply labeling it diversity does not make it constitutional. Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1, -- U.S. --, 2007 WL 1836531, *18 (June 28, 2007) ( "[r]acial balancing is not transformed from 'patently unconstitutional' to a compelling state interest simply by relabeling it 'racial diversity.'"); Messer v. Meno, 130 F.3d 130, 136 (5th Cir. 1997) ("Diversity programs, no matter how well-meaning,

are not constitutionally permissible absent a specific showing of prior discrimination, because 'good intentions' alone are not enough to sustain a supposedly 'benign' racial classification.") (internal punctuation omitted).

Further, defendants claim that since Szczerba and Montgomery did not make the final decision, their comments concerning the use of race are ineligible for consideration. (AB at 24). However, to show direct evidence, plaintiff need only point to "conduct or statements by persons *involved in the decisionmaking process* that may be viewed as directly reflecting the alleged discriminatory attitude." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1096 (3d Cir. 1995) (emphasis added). One form of evidence sufficient to shift the burden under Price Waterhouse is "statements of a person *involved in the decisionmaking process* that reflect a discriminatory ... animus of the type complained of in the suit." Fakete, 308 F.3d at 339 (emphasis added); see Starceski, 54 F.3d at 1096 (either conduct or statements suffice). Clearly, Szczerba and Montgomery were involved in the decisionmaking process. They both met with Baker and Mosely to discuss the promotion to Uniformed Operations Inspector. (OB at 15). Additionally, both Szczerba and Montgomery had input into the decision. (OB at 15-16). Accordingly, their admissions that race is always taken into consideration in promotion decisions also serves as direct evidence sufficient to shift the burden of persuasion.

## IV. PLAINTIFF HAS PROVEN A PRIMA FACIE CASE OF RACE AND GENDER DISCRIMINATION AND ALSO HAS SUFFICIENT EVIDENCE UNDER BOTH PRONGS OF FUENTES TO GO TO THE JURY.

**A. Prima Facie Case.** Defendants do not contest the fact that plaintiff has established a prima facie case of both race and gender discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). (AB at 26-27). Thus, plaintiff has met her burden of proving that: (1) she is white and female; (2)

she was qualified for the position; (3) she did not receive the promotions at issue; and (4) the

position was ultimately filled by a black and a male. See Sheridan v. E.I. DuPont de Nemours and

Co., 100 F.3d 1061, 1066 n.5 (3d Cir. 1996) (en banc).  Accordingly, partial summary judgment

should be entered for plaintiff that she has established a prima facie case of race and gender

discrimination.

     **B.  Defendants' Legitimate Non-Discriminatory Reason.**  Defendants' legitimate non-

discriminatory reason is simply that Howell was more qualified than plaintiff for promotion to

Inspector. (AB at 12-13,29).  The specific reasons offered only explain why Howell was more

qualified. (Id.).  For example, defendants state that Baker chose Howell because of his enthusiasm

for the position (AB at 29), meaning that because Howell was enthusiastic about becoming an

Inspector he was more qualified.  Each of defendants' proffered reasons are only explanations as

to "why" Howell was more qualified.

     **C.  Plaintiff Also Has Satisfied Her Fuentes Burden to Show Pretext.**

     **1.  Prong One.**  Plaintiff relies on the extensive record set forth in her opening

brief showing abundant weaknesses, implausibilities, inconsistencies, incoherencies and

contradictions in defendants' non-discriminatory reason such that a jury could find it unworthy of

belief under the first prong of Fuentes. (OB at 19-27).  Defendants' claim that plaintiff's proffered

evidence regarding her impeccable record versus that of Howell is irrelevant. (AB at 29).

However, as Chief Szczerba testified, in explaining to defendant Baker why plaintiff was far more

qualified than Howell, he addressed issues such as plaintiff's superb attendance, lack of a

disciplinary record, performance and leadership skills, superior training and skill levels, character,

extensive amount of community involvement, experience, loyalty to department, disposition and

knowledge of the department. (Szczerba 216-17,221-22; A1312-14; see OB at 15).  He used

these factors to illustrate how plaintiff was far more qualified for the position than Howell.

Therefore, whether or not Baker actually looked at any personnel records, he was orally

presented with the information contained in them and he chose to disregard it. Thus, the

information is highly relevant.

Further, since defendants' have only proffered one non-discriminatory reason, plaintiff has

to only cast doubt on whether she was more qualified than Howell. Based on the information

presented to Baker, plaintiff was exceedingly more qualified than Howell. (See OB at 19-27).

She has more than enough evidence to allow a reasonable fact-finder to find defendants' reason

unworthy of belief.

However, even if defendants offered more than one reason, plaintiff is not required to

rebut "each" of defendants' proffered non-discriminatory reasons when she can cast substantial

doubt on a fair number of them. Fuentes v. Perskie, 32 F.3d 759, 764 n.7 (3d Cir. 1994). The

Third Circuit has stated,

> We do not hold that, to avoid summary judgment, the plaintiff must cast doubt on each
> proffered reason in a vacuum. If the defendant proffers a bagful of legitimate reasons, and
> the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may
> not need to discredit the remainder. That is because the factfinder's rejection of some of
> the defendant's proffered reasons may impede the employer's credibility seriously enough
> so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no
> evidence undermining those remaining rationales in particular is available.

Id.; Steward v. Sears Roebuck & Company, 2007 WL 2310028, *9 (3d Cir. Aug. 14, 2007).

Plaintiff has offered abundant evidence to disprove defendants' reasons as merely

pretexual. For example, plaintiff expressed to Baker that the WPD should focus on improving its

reputation by doing more positive things with the community, while Howell had ideas for

combating street crime. (AB at 11,29). However, it is doubtful that Howell's idea of combating

crime was given more weight than plaintiff's idea of improving relations with the community in

17

light of defendants' argument that, allegedly, relations with the community needed to be improved. (AB at 19). In fact, giving more weight to Howell's idea of combating street crime over plaintiff's idea to improve the WPD's reputation in the community, flies directly in the face of defendants operational need argument discussed above. (See Argument at II above). Defendants claim on the one hand that they need a race-based policy in order to promote a black candidate over a white in an effort to improve relations with the community. Yet, when plaintiff, a white applicant, stated that relations with the community need improvement this no longer carried any weight. Defendants cannot have it both ways. This discrepancy shows that defendants' non-discriminatory reason can be disbelieved.

Additionally, defendants rely on Howell's resume as a non-discriminatory reason. There is no doubt Baker compared the resumes of Howell and plaintiff. (Baker 68; A0243). But in looking at the two documents, it is clear that Dietz's resume is far superior to Howell's. (D03174-76; Dietz Ex. 1; A1252-54,1416-18). Among other reasons, plaintiff attended the FBI Academy. (OB at 25-26; Dietz Ex. 1 p.1; A1416). As Szczerba testified, only those officers with the highest promise are chosen to attend the FBI Academy. (Szczerba 110; A1286). Plaintiff's resume also shows that she has a significant amount of community service work and serves on various boards or as a member. (Dietz Ex. 1 p.2; A1417). Conversely, Howell's resume does not reflect that he is involved in the community at all. (D03174-76; A1252-54). As set forth extensively in her Opening Brief, plaintiff has sufficiently discredited defendants' non-discriminatory reason so that a jury could disbelieve them. Fuentes, 32 F.3d at 764.

       **2. Prong Two.** Plaintiff relies on the extensive record set forth in her opening brief showing circumstantial and direct evidence of illicit intent under the second prong of Fuentes. (OB at 18-19,36-38).

By way of further explanation, the existence of a legal quota system proves that race operated as the determinative cause of the adverse action.  As discussed at length above, defendants own document proves the existence of a quota system which has exclusively limited one Inspector position, regardless of title, to a black. (See Argument I above).  Baker would have the Court believe that despite being involved in the inception of the black Inspector position in 1976 (OB at 8-9), and the fact that both of his promotions as Mayor were in accordance with the established quota system (OB at 13), he did not make this decision based on race.  Further, Collins, a witness with absolutely no axe to grind, testified that Baker stated it was a "black position."  Taken together, a jury would be able to infer that plaintiff was denied promotion since race was used as a determinative factor.

Further, defendants appear to argue that plaintiff is asking the court to determine whether her evidence is sufficient to prove race was used as a motivating factor. (AB at 29).  However, plaintiff has only asked the Court to determine that she has enough evidence to let a jury make that determination.  After all, "[t]he role of determining whether the inference of discrimination is warranted must remain within the province of the jury." Sheridan, 100 F.3d at 1071.

Plaintiff relies upon the extensive arguments set forth in exhaustive detail in her opening brief on this issue. (OB at 18-19,36-38).

## **CONCLUSION**

For the reasons discussed above and those found in plaintiff's opening brief, summary judgment should be entered for plaintiff on liability under the quota theory and the Court should order a trial on damages and instatement alone.  Summary judgment also should be entered for plaintiff because there is no evidence of a compelling state interest which would justify a quota or the use of race or sex to deny plaintiff a promotion.  Under the mixed motive theory, partial

summary judgment should be entered on liability and the burden of proof should be shifted to

defendants to demonstrate the same decision anyway affirmative defense under <u>Price Waterhouse</u>.

Under the pretext theory, partial summary judgment should be entered in that a prima facie case

has been established, a point which defendants' concede.  Further, partial summary judgment

should be entered in that there is sufficient evidence to go to the jury under both prongs of

<u>Fuentes</u>.


Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

<u>/s/ Thomas S. Neuberger</u>
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com


Dated: August 17, 2007          Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Thomas S. Neuberger, being a member of the bar of this Court do hereby certify that on August 17, 2007, I electronically filed this **Brief** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Teresa A. Cheek, Esquire
Young, Conaway, Stargatt, & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391

Rebecca Butcher, Esq.
Dan Rath, Esq.
Landis, Rath & Cobb, LLP
919 Market Street, Suite 600
Wilmington, DE 19801

/s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQ.**

Dietz, Nancy \ Briefs \ SJRB \ Dietz - SJRB.final