# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CAPTAIN NANCY S. DIETZ,                    :
                                           :
      Plaintiff,                           :
                                           :
  v.                                        :        C.A.No.06-256-SLR
                                           :
MAYOR JAMES M. BAKER,                       :
individually and in his official capacity   :
as the Mayor of the City of Wilmington,    :
and the CITY OF WILMINGTON, a              :
municipal corporation,                      :
                                           :
      Defendants.                          :


## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR A PRELIMINARY INJUNCTION

THE NEUBERGER FIRM, P.A.
THOMAS S. NEUBERGER, ESQ. (#243)
STEPHEN J. NEUBERGER, ESQ. (#4440)
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: September 10, 2007        Attorneys for Plaintiff

## TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    PLAINTIFF HAS SHOWN A REASONABLE LIKELIHOOD OF SUCCESS
ON THE MERITS UNDER THREE SEPARATE THEORIES . . . . . . . . . . . . . 1

A.    Defendants' Racial Quota System for the Rank of Inspector Violates
Both the Fourteenth Amendment Equal Protection Clause and
42 U.S.C. §1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1.    Defendants Ignore Their Own Internal WPD Documents Which
Prove the Quota System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.    What The Undisputed Factual Record Actually Reveals . . . . . . . . 1

a.    Each Time A Black Inspector Retired, A Black Then
Was Promoted to Inspector . . . . . . . . . . . . . . . . . . . . . . . 1

b.    Each Time A White Inspector Retired, A White Then
Was Promoted to Inspector . . . . . . . . . . . . . . . . . . . . . . . 3

Chart - "The Progression of the Quota System" . . . . . . . 4

c.    It is the Race of the Officer Promoted to Inspector When
Another Inspector Retires, Not the Title of the Various
Inspector Positions That Governs . . . . . . . . . . . . . . . . . . 5

d .    The Short Periods of Time Between A Retirement and a
Promotion Are Irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . 5

3.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B.    Under the Direct Evidence Paradigm of Price Waterhouse v. Hopkins,
Race Played a Motivating Role in the Denial of These Promotions . . . . . 6

1.    Defendants Admit to Using Race as a Factor . . . . . . . . . . . . . . . . 6

2.    Baker's Admission that Race was the Reason Plaintiff was Not
Promoted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3.    The Quota System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4.    High Ranking Defense Officials Admit that "Diversity" is Taken
into Consideration for all Promotions and Transfers . . . . . . . . . . 8

C.     Plaintiff Has Proven a Prima Facie Case of Race and Gender Discrimination and Also Has Sufficient Evidence Under Both Prongs of <u>Fuentes</u> To Show a Reasonable Likelihood of Success on the Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1.    Prima Facie Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

2.    Defendants' Legitimate Non-Discriminatory Reason . . . . . . . . . 10

3.    Plaintiff Also Has Satisfied Her <u>Fuentes</u> Burden to Show Pretext . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

a.    Prong One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

b.    Prong Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

D.     Defendants Have Confused the Relevant Legal Tests . . . . . . . . . . . . . . . 13

II.    PLAINTIFF WILL BE IRREPARABLY HARMED IN THE ABSENCE OF PRELIMINARY RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

A.     Plaintiff's Injuries Constitute Irreparable Injury and Money Will Not Make Her Whole . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B.     Plaintiff's Strong Showing of Probable Success on the Merits Establishes the Likelihood of Irreparable Harm . . . . . . . . . . . . . . . . 16-17

III.    NO INNOCENT THIRD PARTIES WILL BE HARMED BY GRANTING PRELIMINARY RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.    THE PUBLIC INTEREST IS SERVED BY GRANTING PRELIMINARY RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

Acierno v. New Castle County, 40 F.3d 645 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bullen v. Chaffinch, 336 F.Supp.2d 342 (D.Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Bullen v. Chaffinch, 336 F.Supp.2d 357 (D.Del. 2004) . . . . . . . . . . . . . . . . . . . . . . 14-16,18-19

Fakete v. Aetna, Inc., 308 F.3d 335 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,9

Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

Grutter v. Bollinger, 539 U.S. 306 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,5

Lewis v. Delaware State College, 455 F.Supp. 239 (D.Del. 1978) . . . . . . . . . . . . . . . . . . . . . . 17

Lewis v. Kugler, 446 F.2d 1343 (3d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Messer v. Meno, 130 F.3d 130 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Moore v. Summers, 113 F.Supp.2d 5 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Oburn v. Shapp, 521 F.2d 142 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994) . . . . . . . . . . . 14-15

Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1,
        – U.S. –, 2007 WL 1836531 (June 28, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,9

Ride The Ducks of Philadelphia, LLC v. Duck Boat Tours, Inc.,
        2005 WL 1583514 (3d Cir. July 6, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Squires v. Bonser, 54 F.3d 168 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 9

Steward v. Sears Roebuck & Company, 2007 WL 2310028 (3d Cir. Aug. 14, 2007) . . . . . . . . 11

Swartzwelder v. McNeilly, 297 F.3d 228 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Walden v. Georgia-Pacific Corp., 126 F.3d 506 (3d Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Constitutions, Statutes, and Rules**

U.S. Const., Amend. I  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

U.S. Const., Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

U.S. Const., Amend. XIV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,17

42 U.S.C. §1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Other Authorities**

 Wright, Miller & Kane, 11A *Federal Practice and Procedure: Civil 2nd* § 2948.1  . . . . . . . . . 17

## ARGUMENT

**I.    PLAINTIFF HAS SHOWN A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS UNDER THREE SEPARATE THEORIES.**

**A.  Defendants' Racial Quota System for the Rank of Inspector Violates Both the Fourteenth Amendment Equal Protection Clause and 42 U.S.C. §1981.**

**1.  Defendants Ignore Their Own Internal WPD Documents Which Prove the Quota System.**  Twice the defendants have purposefully omitted any discussion or mention of the very document and chart they produced in discovery that very plainly explains and proves that whenever a black Inspector retires, another black officer is promoted to replace him.[1] (D03391; A1257);[2] see D.I.81 and 87.  This chart proves the operation of a racial quota system dating back to black Inspector Kenneth Miles in 1978, through the most current black Inspector, Gilbert Howell in 2005. (D03391; A1257).  The WPD's reservation of a "fixed number or proportion of opportunities" for promotion to Inspector is blatantly unconstitutional under Grutter v. Bollinger, 539 U.S. 306 (2003).  As plaintiff has repeatedly stated, the dates corresponding to when one black Inspector retired and when another was promoted are astounding. (D.I.63 at 9-12; D.I.72 at 12-14; D.I.85 at 1-4).

**2.  What The Undisputed Factual Record Actually Reveals.**

**a.  Each Time A Black Inspector Retired, A Black Then Was Promoted to Inspector.**  Yet even in the face of D03391, defendants continue to somehow claim

---

[1] In order to fully understand defendants' repeated denials of an illegal quota system, their Answering Brief in Opposition to Plaintiff's Motion for a Temporary Restraining Order and/or a Preliminary Injunction ("AB") (D.I.87), must be read in conjunction with their Summary Judgment Answering Brief ("SJAB") (D.I.81) which clearly sets forth their full defense to the quota system.

[2] All references are to Plaintiff's Sealed Appendices in Support of her Summary Judgment Motion. (D.I.64-65,67-68).

that a black did not always replace a black. (AB at 8,22; SJAB at 9,17).  Defendants even falsely claim that once a white replaced a black and a black replaced a white. (AB at 8; SJAB at 9).  For example, defendants falsely assert that Miles was succeeded by Eugene Maloney, a white. (AB at 8; SJAB at 9).  Yet a simple review of D03391, WPD's very own internal record, shows that Miles was instead replaced by John Johnson, a black. (A1257).

First, Maloney simply did not replace Miles at the rank of Inspector.  Instead, the record reveals that Maloney was promoted to Inspector three to five years[3] **before** Miles. (D03391; Defendants' Supp. Inter. Resp. #1 p.4; A1257,0377).  In other words, Maloney was an Inspector long before Miles.

This defense error arises from the fact that they are focusing on the various titles given to the Inspector positions over the years, rather than the race of the officer who was actually promoted to replace a retiring Inspector. (AB at 8-9,22-23; SJAB at 9-10,17).  Plaintiff suggests that defendants review their own internal WPD chart and document - D03391 - which plainly reveals that each time a black Inspector retired, a black officer was promoted to Inspector, and that each time a white Inspector retired, a white officer was promoted to Inspector. (D03391; A1257).  Once that defense document is reviewed, it is made clear that each time a black retires, a black is promoted and that each time a white retires, a white is promoted.

Defendants erroneously focus on the fact that when Miles retired in October of 1981, Maloney assumed his title of Inspector of Services. (AB at 8; SJAB at 9; Defendants' Supp. Inter. Resp. #1 p.7; A0380).  Unfortunately for defendants, plaintiff's case is not based on the Inspector's title, but rather their actual position as an Inspector, regardless of the title. (Plaintiff's

_____

[3] There is some discrepancy as to Eugene Maloney's initial promotion date.  It is listed as both 10/16/1973 (D03391; A1257) and 10/26/75 (Defendants' Supp. Inter. Resp. #1 p.4; A0377).

Temporary Retraining Order and/or Preliminary Injunction Opening Brief ("OB") at 12-15,23; Plaintiff's Summary Judgment Opening Brief ("SJOB") at 9-12,29-30; Plaintiff's Summary Judgment Reply Brief ("SJRB") at 1-5). Whenever a black Inspector retired, a black was then promoted to the rank of Inspector. As the defense documents reveal, when Miles retired, John Johnson, another black officer, was promoted to Inspector. (D03391; A1257).

**b. Each Time A White Inspector Retired, A White Then Was Promoted to Inspector.** Similarly, defendants also erroneously claim that John Vignola, a white, was replaced by Keith Ash, a black. (AB at 8; SJAB at 9). Yet defendants' own documents once again reveal that upon Vignola's retirement, John Murray, a white, was promoted to Inspector. (D03391; A1257). Again, defendants confusingly focus on the fact that in 1997, Ash took over for Vignola as Inspector of Operations/Uniformed Operations. (AB at 8; SJAB at 9; Defendants' Supp. Inter. Resp. #1 p.6; A0379). The titles are irrelevant. Based on defendants' own document, a white <u>always</u> replaced a white and a black always replaced a black. (D03391; A1257). The following chart, which is based entirely on defendants' document - D03391 - clearly illustrates this progression.

3

### The Progression of the Quota System



| | | | |
|---|---|---|---|
| 1979 | 1979 | 1979 | 1979 |
| Maloney (w) | Bryan (w) | Friedman (w) | Miles (b) |
| | 1981 | | 1981 |
| | Curtis (w) | | Johnson (b) |
| 1983 | 1983 | 1983 | |
| Dougherty (w) | Payne (w) | Doherty (w) | |
| | retired 1987 | | 1987 |
| | (position | | Hickman (b) |
| | eliminated) | | 1989 |
| retired 1989 | | Feb. 1989 | Pratcher (b) |
| (position | | LaFashia (w) | |
| eliminated) | | May. 1989 | |
| | | Draper (w) | 1993 |
| | | | Dixon (b) |
| | | 1994 | 1995 |
| | | Vignola (w) | Boykin (b) |
| | | | 1997 |
| | | 1997 | Ash (b) |
| | | Murray (w) | 1998 |
| | | | Stallings (b) |
| | | May 1999 | |
| | | Huston (w) | |
| | | July 1999 | 2001 |
| | | Donohue (w) | Wright (b) |
| | | | 2005 |
| | | | Howell (b) |
| | | | retired 7/31/2007 |
| | | present | (position vacant) |

(D03391; A1257)

4

**c. It is the Race of the Officer Promoted to Inspector When Another Inspector Retires, Not the Title of the Various Inspector Positions That Governs.** Contrary to the defense assertion that "[n]either inspector position has been 'exclusively white' or 'exclusively African-American,'" (AB at 9; SJAB at 10), plaintiff's argument is based on the Inspectors in existence at any given time, not their titles. (OB at 12-15,23; SJOB at 9-12,29-30; SJRB at 1-5). Plaintiff has never sought to prove her case based on titles alone. Such a simplistic approach would elevate form over substance and violate the Supreme Court's express admonition "to 'smoke out' illegitimate uses of race" by the government. Grutter, 539 U.S. at 326.[4]

**d . The Short Periods of Time Between A Retirement and a Promotion Are Irrelevant.** Lastly, defendants attempt to disprove the quota system by arguing there were three short month long periods of time when no black Inspector existed. (AB at 9,22; SJAB at 10,17). But these short periods of time are irrelevant to the question of whether whenever a black Inspector retired, another black then was promoted to Inspector, and to whether whenever a white Inspector retired, another white then was promoted to Inspector. Once a replacement was promoted, he always was of the same race as the officer retiring.

The periods of time at issue are as follows. First, there was no black Inspector from July 31, 1987 to September 30, 1987, a period of only two months. (AB at 9; SJAB at 10). Second, there was no black Inspector from January 7, 1993 to February 5, 1993, a period of only one month. (Id.). Third, there was no black Inspector from September 22, 1995 to November 4,

---

[4] Even when focusing solely on titles as defendants wish to do, the record reveals that, since 1997, the Uniformed Operations Inspector position has only been filled by a black male, while the Investigative Operations Inspector has only been filled by a white male - a point defendants failed to address. (OB at 15; SJOB at 13; SJRB at 5 n.2).

1995, a period of only one and a half months. (Id.).  That defendants have hung their quota

defense on this assertion reveals the weakness of their position.  It should come as no surprise

that it may take the WPD a little bit of time to promote a replacement Inspector when one

suddenly announces his retirement.  Sometimes it takes time to get the appropriate paperwork

completed or to do the sham consultations with the relevant politicians.  Thus, this one to two

month span is inconsequential and irrelevant.

  **3.  Conclusion.**  Defendants have now twice failed to address the actual factual

record, including their own internal WPD documents which themselves independently reveal the

existence of the racial quota system.  Thus, they have not created a genuine issue of material

disputed fact.  By refusing to address their own chart demonstrating and proving the quota

system, defendants have conceded that the chart is accurate. (D03391; A1257).  Therefore, no

dispute of material fact exists with regard to the quota system.  For the reasons stated above, as

well as in plaintiff's opening brief (OB at 10-15,22-23), plaintiff has overwhelmingly shown a

reasonable probability of success on the merits and a Temporary Restraining Order and/or a

Preliminary Injunction should issue.

  **B.  Under the Direct Evidence Paradigm of Price Waterhouse v. Hopkins, Race**

**Played a Motivating Role in the Denial of These Promotions.**  Contrary to defense assertions,

plaintiff has provided a substantial amount of direct evidence to warrant shifting the burden of

persuasion to defendants under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  Plaintiff

relies primarily on the extensive record set forth in her opening briefs describing in detail the

direct evidence. (OB at 9-18,23-27; SJOB at 6-13,30-34).

  **1.  Defendants Admit to Using Race as a Factor.**  It is important to note that

defendants have openly admitted that they use race in making promotion decisions. (SJAB at 18-

20).  "The City's goal is to fill each open position with an individual who is well qualified for the

job and to consider all factors, including the applicants' racial and ethnic background." (SJAB at

18) (emphasis added).  Defendants further state that race is the determinative factor when there

are two equal candidates for a promotion. (SJAB at 20).  "[I]f two candidates are both qualified

for a position, the fact that one is a minority group member may weigh in that person's favor."

(Id.).  There can be no more direct evidence than an admission that "*a discriminatory attitude*

*was more likely than not a motivating factor in the employer's decision*."  Walden v. Georgia-

Pacific Corp., 126 F.3d 506, 513 (3d Cir. 1997) (internal punctuation omitted) (emphasis added).

**2.  Baker's Admission that Race was the Reason Plaintiff was Not Promoted.**

Plaintiff produced testimony from Cpl. George Collins who stated that, during a monthly meeting

with the Fraternal Order of Police President and Vice-President in 2005, Baker stated the

Inspector had to be black. (Collins 9,11; A0221-22).  Baker denies making this statement. (AB at

25; SJAB at 23).  However, unlike Baker, Collins is a disinterested witness with absolutely no

axe to grind and defendants have offered no evidence to the contrary.  Thus, Baker's own words

"directly reflect the [ ] unlawful basis for the adverse employment decision" not to promote

plaintiff.  Fakete v. Aetna, Inc., 308 F.3d 335, 339 (3d Cir. 2002).  His words draw a direct

correlation to the quota system, as well as defendants admission that they use race in promotion

decisions.

**3.  The Quota System.**  As discussed at length above, as well as in her opening

brief, plaintiff produced evidence of a quota system excluding whites and females from

promotion to Inspector, which was affirmed by defendants' own internal WPD document. (See

Argument I.A. above; SJOB at 7-13).  The racial quota system is not based on purely statistical

evidence, but rather documents produced by defendants themselves which admit that when one

black Inspector retires, another is then promoted. (D03391; Defendants' Supp. Inter. Resp.#1 p.3-7; ; A1257,376-80). The Court need not draw any inferences about the import of these facts. (See SJAB at 25). The quota system, as admitted by defendants, serves as direct evidence sufficient to shift the burden of persuasion.

**4. High Ranking Defense Officials Admit that "Diversity" is Taken into Consideration for all Promotions and Transfers.** In his deposition, Szczerba admitted that every time he meets with Mosley to discuss promotions and transfers, Mosley always inquired into the race of the officer. (Szczerba 209; A1310). As both Szczerba and Montgomery explained, the race of the officer being promoted is always discussed. (Szczerba 207-09; Montgomery 11-14,16-17,24; A1310,267-68,270). Defendants now attempt to run from this assertion, by stating for the first time, that Mosley is simply ensuring these "decisions do not appear to be the result of discrimination." (AB at 26; SJAB at 24). However, Baker admitted that when deciding between two equal candidates, diversity is considered without further qualification. (Baker 33-34; A0234-35). Baker never stated it was an attempt to prevent discrimination, but rather an effort to promote diversification. (Id.). Defendants themselves admit that they use race in the promotion process. (SJAB at 18-20). But simply labeling it diversity does not make it constitutional. Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1, -- U.S. --, 2007 WL 1836531, *18 (June 28, 2007) ( "[r]acial balancing is not transformed from 'patently unconstitutional' to a compelling state interest simply by relabeling it 'racial diversity.'"); Messer v. Meno, 130 F.3d 130, 136 (5th Cir. 1997) ("Diversity programs, no matter how well-meaning, are not constitutionally permissible absent a specific showing of prior discrimination, because 'good intentions' alone are not enough to sustain a supposedly 'benign' racial classification.") (internal punctuation omitted).

Further, defendants claim that since Szczerba and Montgomery did not make the final decision, their comments concerning the use of race are ineligible for consideration. (AB at 26-27; SJAB at 24-25). However, to show direct evidence, plaintiff need only point to "conduct or statements by persons *involved in the decisionmaking process* that may be viewed as directly reflecting the alleged discriminatory attitude." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1096 (3d Cir. 1995) (emphasis added). One form of evidence sufficient to shift the burden under Price Waterhouse is "statements of a person *involved in the decisionmaking process* that reflect a discriminatory ... animus of the type complained of in the suit." Fakete, 308 F.3d at 339 (emphasis added); see Starceski, 54 F.3d at 1096 (either conduct or statements suffice). Clearly, Szczerba and Montgomery were involved in the decisionmaking process. They both met with Baker and Mosely to discuss the promotion to Uniformed Operations Inspector. (OB at 20; SJOB at 15). Additionally, both Szczerba and Montgomery had input into the decision. (SJOB at 15-16; see OB at 20). Accordingly, their admissions that race is always taken into consideration in promotion decisions also serves as direct evidence sufficient to shift the burden of persuasion.

Once the burden of proof shifts to the defendants there is no evidence they would have promoted Howell anyway. Thus, it is highly likely plaintiff will prevail on the merits of this theory also.

**C.  Plaintiff Has Proven a Prima Facie Case of Race and Gender Discrimination and Also Has Sufficient Evidence Under Both Prongs of Fuentes To Show a Reasonable Likelihood of Success on the Merits.**

**1. Prima Facie Case.** Defendants do not contest the fact that plaintiff has established a prima facie case of both race and gender discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248

(1981). (SJAB at 26-27).

**2. Defendants' Legitimate Non-Discriminatory Reason.** Defendants'

legitimate non-discriminatory reason is simply that Howell was more qualified than plaintiff for

promotion to Inspector. (AB at 11,29; SJAB at 12,29). The specific reasons offered only explain

<u>why</u> Howell was more qualified. (<u>Id.</u>). For example, defendants state that Baker chose Howell

because he "really wanted the job" (AB at 29; <u>see</u> SJAB at 29), meaning that because Howell

wanted to be an Inspector, he was more qualified. Each of defendants' proffered reasons are only

explanations as to "why" Howell was more qualified.

**3. Plaintiff Also Has Satisfied Her <u>Fuentes</u> Burden to Show Pretext.**

**a. Prong One.** Plaintiff relies on the extensive record set forth in her

opening briefs showing abundant weaknesses, implausibilities, inconsistencies, incoherencies

and contradictions in defendants' non-discriminatory reason such that a jury could find it

unworthy of belief under the first prong of <u>Fuentes</u>. (OB at19-21; SJOB at 19-27). Defendants'

claim that plaintiff's proffered evidence regarding her impeccable record versus that of Howell is

irrelevant. (AB at 29-30; SJAB at 29). However, as Chief Szczerba testified, in explaining to

defendant Baker why plaintiff was far more qualified than Howell, he addressed issues such as

plaintiff's superb attendance, lack of a disciplinary record, performance and leadership skills,

superior training and skill levels, character, extensive amount of community involvement,

experience, loyalty to department, disposition and knowledge of the department. (Szczerba 216-

17,221-22; A1312-14; <u>see</u> OB at 5-6; SJOB at 15). He used these factors to illustrate how

plaintiff was far more qualified for the position than Howell. Therefore, whether or not Baker

actually looked at any personnel records, he was orally presented with the information contained

in them and he chose to disregard it. Thus, the information is highly relevant.

10

Further, since defendants' have only proffered one non-discriminatory reason, plaintiff has to only cast doubt on whether she was more qualified than Howell. Based on the information presented to Baker, plaintiff was exceedingly more qualified than Howell. (See OB at 6-9; SJOB at 20-27). She has more than enough evidence to allow a reasonable fact-finder to find defendants' reason unworthy of belief.

However, even if defendants offered more than one reason, plaintiff is not required to rebut "each" of defendants' proffered non-discriminatory reasons when she can cast substantial doubt on a fair number of them. Fuentes v. Perskie, 32 F.3d 759, 764 n.7 (3d Cir. 1994). The Third Circuit has stated,

> We do not hold that, to avoid summary judgment, the plaintiff must cast doubt on each proffered reason in a vacuum. If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfinder's rejection of some of the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.

Id.; Steward v. Sears Roebuck & Company, 2007 WL 2310028, *9 (3d Cir. Aug. 14, 2007).

Plaintiff has offered abundant evidence to disprove defendants' reasons as merely pretexual. For example, plaintiff expressed to Baker that the WPD should focus on improving its reputation by doing more positive things with the community, while Howell had ideas for combating street crime. (SJAB at 11,29) However, it is doubtful that Howell's idea of combating crime was given more weight than plaintiff's idea of improving relations with the community in light of defendants' argument that, allegedly, relations with the community needed to be improved. (SJAB at 19) In fact, giving more weight to Howell's idea of combating street crime over plaintiff's idea to improve the WPD's reputation in the community, flies directly in the face of defendants operational need argument discussed in their summary judgment

answering brief. (See SJRB at 6-12).  Defendants claim on the one hand that they need a race-based policy in order to promote a black candidate over a white in an effort to improve relations with the community.  Yet, when plaintiff, a white applicant, stated that relations with the community need improvement this no longer carried any weight.  Defendants cannot have it both ways.  This discrepancy shows that defendants' non-discriminatory reason can be disbelieved.

Additionally, defendants rely on Howell's resume as a non-discriminatory reason.  There is no doubt Baker compared the resumes of Howell and plaintiff. (Baker 68; A0243).  But in looking at the two documents, it is clear that Dietz's resume is far superior to Howell's. (D03174-76; Dietz Ex. 1; A1252-54,1416-18).   Among other reasons, plaintiff attended the FBI Academy. (SJOB at 25-26; Dietz Ex. 1 p.1; A1416).  As Szczerba testified, only those officers with the highest promise are chosen to attend the FBI Academy. (Szczerba 110; A1286). Plaintiff's resume also shows that she has a significant amount of community service work and serves on various boards or as a member. (Dietz Ex. 1 p.2; A1417).  Conversely, Howell's resume does not reflect that he is involved in the community at all. (D03174-76; A1252-54).  As set forth extensively in her opening brief, plaintiff has sufficiently discredited defendants' non-discriminatory reason so that a jury could disbelieve them. Fuentes, 32 F.3d at 764.

   **b.  Prong Two.**  Plaintiff relies on the extensive record set forth in her opening briefs showing circumstantial and direct evidence of illicit intent under the second prong of Fuentes. (OB at 18-19; SJOB at 18-19,36-38).

By way of further explanation, the existence of a legal quota system proves that race operated as the determinative cause of the adverse action.  As discussed at length above, defendants own document proves the existence of a quota system which has exclusively limited one Inspector position, regardless of title, to a black. (See Argument I.A. above).  Baker would

have the Court believe that despite being involved in the inception of the black Inspector position in 1976 (OB at 11; SJOB at 8-9), and the fact that both of his promotions as Mayor were in accordance with the established quota system (OB at 15; SJOB at 13), he did not make this decision based on race. Further, Collins, a witness with absolutely no axe to grind, testified that Baker stated it was a "black position." Taken together, a jury would be able to infer that plaintiff was denied promotion since race was used as a determinative factor.

The evidence and extensive arguments set forth above as well as in her opening briefs on this issue, (OB at 18-21; SJOB at 18-27,36-38), prove that plaintiff has a reasonable likelihood of success on the merits at trial.

**D. Defendants Have Confused the Relevant Legal Tests.** Without legal authority, defendants claim that plaintiff must prove a reasonable likelihood of success that the Court will grant instatement. (AB at 31). But defendants are mixing legal tests. Plaintiff must show a reasonable likelihood of success on the merits of the underlying action. The irreparable harm part of the preliminary injunction test is the basis of this motion - that plaintiff will be irreparably harmed if the current vacant position is filed because post-trial (after plaintiff succeeds on the merits), instatement law will not allow the Court to "bump" the newly promoted officer - an innocent third party. Plaintiff has not asked the Court to conclusively determine if she is entitled to instatement, rather she has requested the opportunity to present her strong case at trial and preserve her claim for instatement, an important part of the necessary make whole relief.

Furthermore, defendants claim that since circumstances of the case are unknown at this time, it prevents plaintiff from being granted preliminary relief. The import of defendants' argument is that all circumstances must be known for the Court to determine if instatement is an appropriate remedy, but until the time of trial or after trial, all circumstances will not be known

thus at this stage plaintiff is not entitled to an injunction. (AB at 32).  Defendants' illogical

conclusion that a plaintiff can never be granted preliminary relief until the time of trial or after

trial has occurred is unfounded.  "[T]he purpose of a preliminary injunction is to *prevent* the

occurrence of injuries." <u>Ride The Ducks of Philadelphia, LLC v. Duck Boat Tours, Inc.</u>, 2005

WL 1583514, *2 (3d Cir. July 6, 2005) (emphasis added).  Plaintiff has requested preliminary

relief to prevent the injury she will sustain if defendants fill the vacant position because the state

of instatement law will not allow the Court to "bump" the officer who fills the vacant position.

In other words, if plaintiff if forced to wait until trial or after trial, she will already have sustained

the injury - being deprived of her rightful position which she presently would hold but for

defendants' discrimination against her.

      Plaintiff's request for a Temporary Restraining Order and/or Preliminary Injunction is

simply to preserve her claim for instatement because once defendants fill the vacant Inspector

position, she will be forced to overcome the obstacle of "bumping" a presumably innocent third

party.  To be successful on her instatement claim after a trial on the merits, plaintiff must show:

(1) whether there is irreparable animosity between the parties; (2) the effect of instatement on

innocent third parties which may be disrupted by the replacement; (3) the availability of a

replacement position; (4) the need to make the aggrieved party whole; and (5) the need to deter

employers from engaging in unconstitutional conduct. <u>Bullen v. Chaffinch</u>, 336 F.Supp.2d 357,

359 (D.Del. 2004) (<u>Bullen II</u>) (internal punctuation and citations omitted).  While plaintiff's

instatement claim is not condemned if defendants fill the position, "Courts are particularly

reluctant to order a remedy that will have the effect of 'bumping' an innocent, incumbent

employee." <u>Id.</u> at 360.  If defendants are permitted to fill the vacant position prior to trial, they

will benefit from their illegal discrimination against plaintiff.  There is a "fundamental rule of

14

equity that a party should not be permitted to profit from its own wrongdoing." Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1388 (3d Cir. 1994).  By claiming that plaintiff is not

entitled to preliminary relief, defendants hope to gain the benefit of time in order to fill the

position and preclude plaintiff from instatement after trial.  Plaintiff has requested preliminary

relief to preserve her claim for instatement and to prevent defendants from benefitting from their

illegal conduct.

## II.    PLAINTIFF WILL BE IRREPARABLY HARMED IN THE ABSENCE OF PRELIMINARY RELIEF.

### A.  Plaintiff's Injuries Constitute Irreparable Injury and Money Will Not Make Her

**Whole.**  To demonstrate irreparable harm, a plaintiff must "demonstrate potential harm which

cannot be redressed by a legal or an equitable remedy following a trial." Acierno v. New Castle

County, 40 F.3d 645, 653 (3d Cir. 1994) (internal punctuation omitted).  In her opening brief,

plaintiff set forth the intangible, non-monetary psychic injuries she has sustained as a result of

defendants' refusal to promote her. (OB at 30-31).  Plaintiff argued that the psychic effects of the

opportunity to lead the Uniformed Operations of the WPD cannot be substituted by the payment

of money. (OB at 30).

Defendants claim that plaintiff's lifelong aspirations to rise into the upper echelon of the

WPD and make a difference in the lives of citizens and officers are "tenuous at best" and are

"transparent makeweight." (AB 18-19).  Unfortunately for defendants, our District has squarely

rejected such a claim.  Judge Farnan has held the intangible interests of two police officer

plaintiffs in becoming sergeants could not be compensated by a money judgment and instead

instatement was the only way to make them whole.  Bullen II, 336 F.Supp.2d at 362 (citing

Squires v. Bonser, 54 F.3d 168, 173 (3d Cir. 1995)).  The Court specifically noted those

"[p]laintiffs' testimony concerning their feelings toward their jobs and their reasons for pursuing

15

the rank of sergeant." <u>Id.</u>[5]  As our Circuit has held, "the psychological benefits of work are

intangible, yet they are real and cannot be ignored."  <u>Squires</u>, 54 F.3d at 173.

The half-hearted defense claim that these principles are irrelevant because they do not

address preliminary injunctions is without merit. (AB 18 n.2).  All of these cases address the

"touchstone" of civil rights remedies which is make-whole relief, <u>see, e.g.</u> <u>Squires</u>, 54 F.3d at

171-72, which is the driving force behind the pending motion - that plaintiff cannot be made

whole following success on the merits absent injunctive relief now by the Court.

The defense similarly claims that plaintiff's irreparable harm may be addressed post-trial

where she can be promised the next available Inspector position and money damages will suffice

until this opportunity presents itself due to a purported high turnover rate at the rank of Inspector.

(AB at 18-20). First, the facts belie the claim that there is a high turnover rate at this rank.

Current Inspector Donahue has held his position for more than 8 years.  (D03391; A1257).

Former Inspector Wright held his for 4 years (<u>Id.</u>), and Inspector Howell only recently retired due

to his well known chronic absentee and health problems that are among the many reasons that he

never should have been promoted in the first place.  Second, this is simply not a situation where

there are 80 such positions at a much lower rank opening where there are much higher rates of

attrition and turnover.  <u>Cf.</u> <u>Bullen II</u>, 336 F.Supp.2d at 362.  This defense, like the rest, also is

without merit.  In order to be made whole, plaintiff must be instated to a position comparable to

the one which she was denied - one of only two Inspectors positions which due not have a high

rate of turnover.  Money damages will not make plaintiff whole.

**B. Plaintiff's Strong Showing of Probable Success on the Merits Establishes the**

---

[5]  Those feelings specifically included their testimony that "they were committed to their careers as police officers early in life."  <u>See</u> <u>Bullen v. Chaffinch</u>, 336 F.Supp.2d 342, 355 (D.Del. 2004) (<u>Bullen I</u>).

**Likelihood of Irreparable Harm.**  In response to the Third Circuit's clear mandate that

"[p]ersons who can establish that they are being denied their constitutional rights are [sic]

entitled to [injunctive] relief," Lewis v. Kugler, 446 F.2d 1343, 1350 (3d Cir. 1971), defendants

claim that plaintiff has cited no legal authority in the employment context to establish this

proposition, and so has purportedly failed to establish irreparable harm. (AB at 20-22).

First, plaintiff notes that as set forth in Argument II.A. above, plaintiff has already

independently established irreparable harm.  Thus, the probability of success on the merits need

not be taken alone, but also with the specific irreparable harm outlined above.  Second, the very

first case cited by plaintiff for this legal proposition (OB at 31) was an employment case from the

District of Delaware.  Lewis v. Delaware State College, 455 F.Supp. 239 (D.Del. 1978), was,

inter alia, a Fourteenth Amendment equal protection case arising out of the employment context.

There, the Court held that

> the plaintiff's strong showing of probable success on the merits of her claims that she has
> been deprived of her constitutional right[ ] of ... equal protection is sufficient to establish
> the likelihood of irreparable harm.

Id. at 251.  The constitutional right violated in Lewis v. Delaware State College - the Fourteenth

Amendment Equal Protection Clause - is the same right violated in this case by defendants' illicit

racial quota system and discriminatory actions.

That this legal proposition extends to many constitutional contexts such as the Fourteenth

Amendment, Lewis v. Delaware State College, 455 F.Supp.at 251; the First Amendment,

Swartzwelder v. McNeilly, 297 F.3d 228, 241-42 (3d Cir. 2002), the Fourth Amendment, Lewis

v. Kugler, 446 F.2d at 1350, and is so well recognized as to be included as a general rule in the

most well respected scholarly legal procedural authority in existence, see Wright, Miller & Kane,

11A *Federal Practice and Procedure: Civil 2nd* § 2948.1, at pg. 161, does not attest to its

weakness but rather to its strength. Accordingly, the defense claims are without merit and this factor strongly supports granting injunctive relief.

## III.  NO INNOCENT THIRD PARTIES WILL BE HARMED BY GRANTING PRELIMINARY RELIEF.

In her opening brief, plaintiff explained that because the Inspector position is currently vacant, no party is accumulating vested rights and therefore no risk of harming an innocent third party exists. (OB at 32-33). Notably, defendants have not claimed that any particular officer will be harmed by the granting of preliminary relief, but rather that a vague, nebulous undefined class of unidentified officers of various ranks will be harmed. (AB at 32-33). Unfortunately, our District has already rejected a similar claim. As Judge Farnan has explained, "the relevant case law refers to the displacement of employees who already occupy the disputed positions and not necessarily to the group of employees who might be eligible for such positions, but do not yet actually hold them." Bullen II, 336 F.Supp.2d at 361. Defendants cite to Oburn v. Shapp, 521 F.2d 142, 152 (3d Cir. 1975) to support their argument that certain officers cannot be promoted and therefore will be harmed. (AB at 33). However, in Oburn the Third Circuit was faced with a decision to either grant or deny injunction relief, the granting of which would undisputably interrupt and preclude current Pennsylvania State Police cadets' continued training and employment as state troopers. Id. In the case at hand, no officer is in danger of losing his job nor is any training being halted. Rather, defendants claim there are groups of officers who might lose an opportunity to be promoted. Unlike the graduation of the cadets in Oburn, defendants cannot identify one specific individual who will be harmed by the granting of preliminary relief. Such a speculative claim should be rejected.

Additionally, defendants claim that an interim captain cannot be placed in the vacant Inspector position because s/he will be harmed by the interim nature of the appointment is

18

irrelevant. Since 2005 the WPD has operated with Howell's chronic absenteeism by having other captains pick up the slack. (Szczerba 192-94; A1306-7; OB at 21). Previously, defendants were not concerned about morale when they appointed Howell to Inspector knowing he suffered from a chronic absentee problem and that captains would have to pick up the slack. (Id.; see also SJOB at 20). Now defendants have flip-flopped and are suddenly overcome with concern that appointing an interim captain will damage that captain's morale. (AB at 34). Defendants cannot have it both ways.

Nevertheless, the relevant test is not whether unspecified, vague classes of people might be harmed by the preliminary relief, but rather whether clearly identified innocent third parties already occupying the Inspector position will be harmed. See Bullen II, 336 F.Supp.2d at 361. It is uncontested that the position is currently vacant, therefore no innocent third party can be harmed by the requested preliminary relief.

## IV.    THE PUBLIC INTEREST IS SERVED BY GRANTING PRELIMINARY RELIEF.

Defendants do not contest that the public interest is served by placing plaintiff into the position to which she was illegally denied because of her race. Instead, the defense claims that it is against public interest to disrupt a governmental agency's function absent "a strong showing that the discrimination is real rather than perceived." Moore v. Summers, 113 F.Supp.2d 5, 18 (D.D.C. 2000); (AB at 34-35). Plaintiff whole-heartedly agrees and because plaintiff can present a strong showing of real discrimination and likelihood of success on the merits, as demonstrated by defendants' own internal documents, it is in the public interest to preclude defendants from further trampling plaintiff's cherished constitutional rights.

Additionally, defendants claim that by not immediately filling the vacant Inspector position their public's safety is in jeopardy. (AB at 35). However, defendants argument is

19

refuted by their own actions.  From the time Howell was promoted to Inspector in November of 2005 through his recent retirement in July of 2007, defendants never stepped in the alleviate any of the added burdens or increased workload on the Chief, other Inspector and eight Captains. (See AB at 35).  Instead, defendants simply allowed Howell to continuously not show up for work and assumed others would get the work done.  If the public safety is so jeopardized by not having two Inspectors performing "vital functions for the Department" one wonders why defendants never sought to force Howell to come to work or simply replace him.

Plaintiff is simply asking the court to maintain the status quo or in the alternative to appoint a temporary replacement.  The true public interest lies in rectifying the discriminatory actions of high public officials and placing plaintiff into the position she would have already held but for defendants' illegal actions.

## CONCLUSION

For the reasons stated here, as well as in her opening brief, a Temporary Restraining Order and/or Preliminary Injunction should be granted.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: September 10, 2007                Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on

September 10, 2007, I electronically filed this **Brief** with the Clerk of the Court using CM/ECF

which will send notification of such filing to the following:

>Teresa A. Cheek, Esquire
>Young, Conaway, Stargatt, & Taylor, LLP
>The Brandywine Building, 17th Floor
>1000 West Street, P.O. Box 391
>Wilmington, Delaware 19899-0391
>tcheek@ycst.com
>
>Rebecca Butcher, Esq.
>Dan Rath, Esq.
>Landis, Rath & Cobb, LLP
>919 Market Street, Suite 600
>Wilmington, DE 19801
>butcher@lrclaw.com

>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**

Dietz, Nancy \ Briefs \ Dietz - TRO-PI RB